CARRILLO et al. v. CARRILLO et al.    (No. 7631.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 24, 1926. Rehearing Denied Dec. 22, 1926.)

1. Limitation of actions ⬅100(11)—Grantors' failure to assert fraud, for 13 years after grantee's conveyance to others, held to bar claim because of absence of diligence.

Plaintiffs' failure, for 13 years after father's conveyance of land, to claim interest therein because of fraud in their conveyance to him, during which time it was occupied by innocent purchasers for value, held because of absence of diligence to bar their claim, since limitation began to run when father sold land.

2. Limitation of actions ⬅99(1)—Rule that fraud will prevent running of limitation is one of judicial construction.

Rule that fraud will prevent running of limitation is not statutory, but is one of judicial construction.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Limitation of actions ☜100(11)—Neither fraud which could be discovered by diligence, nor ignorance of its existence, will justify delay of those claiming to have been defrauded.**

Neither fraud alone nor ignorance of its existence will justify delay and laches on parts of persons claiming to have been defrauded, where they discovered fraud, or could have discovered it by exercise of reasonable diligence.

**4. Trespass to try title ☜44—Trial ☜66—Directed verdict for defendants and refusal to allow plaintiffs to introduce additional proof held proper, in trespass to try title.**

In trespass to try title, where, if every fact pleaded by plaintiffs had been placed in evidence, it would not have excused their negligence in failing to assert rights sooner, direction of verdict for defendants and refusal to allow plaintiffs to introduce additional proof *held* proper.

Appeal from District Court, Duval County; Hood Boone, Judge.

Trespass to try title by Librado Carrillo and others against Maximiliano Carrillo and others. Judgment for defendants on an instructed verdict, and plaintiffs appeal. Affirmed.

J. C. Scott, of Corpus Christi, for appellants.

John C. Townes and R. E. Seagler, both of Houston, Gus L. Kowalski. of Kingsville, M. E. Jenkins, of Alice, and Phillips, Trammel & Chizum, of Fort Worth, for appellees.

FLY, C. J. This is an action of trespass to try title to an undivided one-fourth interest in 640 acres of land in Duval county, known as section No. 82, certificate 31/184, G. H. & H. Ry. Co., original grantee, instituted by Librado Carrillo, Barbara Carrillo de Heras, a feme sole, Jose Carrillo, and Francisca Carrillo de Chapa, joined by her husband, Narciso Chapa, against Maximiliano Carrillo, Miguel Ruiz, Valentino Carrillo, H. A. Speer, the Humble Oil & Refining Company, and the Empire Gas & Fuel Company. Under instruction of the court, a verdict was returned in favor of appellees and judgment rendered thereon.

It was shown that on June 12, 1907, the appellants and Eusebio Carrillo, who was not made a party to this suit, executed to their father, Luiz Carrillo, a warranty deed to the 640 acres of land known and designated on the map of Duval county as section No. 82, certificate 31/184, G. H. & H. Ry. Co., original grantee, by which they transferred "all or any right, title or interest we or either have as children and heirs at law of Ysabel Gonzales de Carrillo, who died on the 17th day of May 1907.". The last named was the mother of the appellants, makers of the deed. The suit depended for its vitality on setting aside that deed on the ground of fraudulent representations made to the vendors by Eusebio Carrillo, who was one of the grantors. He was not a party to the suit, and it was not alleged or attempted to be proved that he, in any manner, obtained any advantage or profit by the execution of the deed to Luiz Carrillo. The deed was duly acknowledged by each of the grantors on the day of its execution and was filed for record on October 4, 1907, in the county clerk's office of Duval county, and was duly recorded on October 5, 1907. Luiz Carrillo, on July 24, 1909, sold and conveyed the 640 acres in question to Maximiliano Carrillo, and his deed was duly recorded on July 6, 1909; the latter also obtained a patent to the land on October 28, 1909, which was duly recorded on December 3, 1909. On November 27, 1909, the last-named grantee and his wife sold 180 acres of the land to Valentino Carrillo, and on November 23, 1909, said Maximiliano Carrillo and wife conveyed to Juan Carrillo 160 acres of the land. Both these deeds were at once filed and recorded. Maximiliano Carrillo and wife, on September 9, 1916, executed a lease for oil and gas purposes to the Empire Gas & Fuel Company. Juan Carrillo and wife conveyed their 160 acres out of the section to Miguel Ruiz on June 16, 1913, and he and wife executed a gas and oil lease to the Empire Gas & Fuel Company on September 9, 1916. That corporation also obtained a gas and oil lease from Valentino Carrillo and wife on the same date, and all the leases were duly recorded. The Humble Oil & Refining Company also showed interest in leases of minerals on or under certain parts of the land. Speer also obtained, in 1922, conveyances to the minerals in certain portions of the land from Valentino Carrillo, Maximiliano Carrillo, and Miguel Ruiz, each being joined by his wife.

Appellants sought to set aside their warranty deed to Luiz Carrillo, their father, on the ground that they executed it upon the fraudulent representations of Eusebio Carrillo, one of the grantors, that it was only an agreement to permit the father to live on and enjoy the land during the remainder of his life. That deed was executed on June 12, 1907, and promptly recorded, and the entire 640 acres of land was sold and conveyed by Luiz Carrillo to Maximiliano Carrillo, in 1909, and the deed promptly recorded. All the successive grantees held possession of and used and enjoyed the land, without protest from appellants, until oil was discovered and this suit filed, in 1925. Discovery of oil and discovery of fraud seem to have been coincident with each other, although appellants lived within four or five miles of the land after conveyance was made and recorded. Appellants allege that they did not discover the fraud of Eusebio Carrillo until 1922, 15 years after the fraudulent representations. They must have known of the occupancy of the land by different parties, and some of the

---

appellants admitted that they knew that parts of the land had been sold. They do not claim that any fraud was practiced on them after the execution of the deed, in 1907, and yet when the father, for whose benefit they claimed to have made the deed, died, they made no effort to reclaim the land conveyed solely for his benefit during his life. He died in 1918, and yet no steps were taken to claim the land.

[1] Two years after the deed was executed by appellant to Luiz Carrillo, he did not recognize the fact that he had only a life estate in the land, but he treated it as his property and sold the entire tract and put others in possession. He repudiated any claim made by appellants to the land and sold it. Appellants were charged with knowledge of the conveyance of the land more than 13 years before they claim they discovered that every one except them considered the instrument in form a deed, to be a deed. They knew their father had repudiated any deed for his life, they knew parts of the land had been sold and the purchasers had gone in possession, and yet,,according to their claim, they were so densely and stupidly ignorant that they could not understand it when they were dispossessed of their land. Under the testimony their claim is utterly incredible. If time can ever quiet a title, it should do it in this instance. The land was occupied under duly recorded deeds by innocent purchasers for value, and yet no steps were taken by appellants to protect themselves or any one else.

[2, 3] The rule that fraud will prevent the running of limitation is not statutory, but the rule has been added by judicial construction, and, being in conflict with the policy of such statutes, which are statutes to promote peace and bring repose, the judicial grafting on the statute must have strict rules applied to it, and no'one who has been negligent. or indifferent to their rights, as well as those of others, should be allowed to profit by a plea of fraud and disturb the rights of others. Neither fraud alone, nor ignorance of its existence, will justify delay and laches on the parts of persons claiming to have been defrauded, where they discovered the fraud or could have discovered it by. the exercise of reasonable diligence. McFaddin v. Tex. Rice Land Co. (Tex. Civ. App.) 253 S. W. 916, and authorities therein cited.

Appellants sat calmly by while the land in question was being passed to the possession of one person after another, when the records of deeds of their county proclaimed the existence of deeds to the land, when the rights of innocent parties were constantly arising, when men were spending large sums of money for the land or rights in it, led to do so by a deed made by appellants many years before. They took no action until many years had gone by and'many valuable rights in the land had been acquired, and, when at last they acted, it was in justice and equity too late. Limitations began to run against them in 1909, when Luiz Carrillo acting under his warranty deed sold the land. As said by this court in Vodrie v. Tynan, 57 S. W. 680:

"The facts fail to show any diligence whatever upon the part of plaintiffs in error in any efforts to discover fraud, although the record of the deed placed them in position to discover every fact they had at the time of trial that tended to show fraud."

There was no concealment of the fraud, if fraud there was, but everything was openly done. As said by this court in Prosser v. Bank, 134 S. W. 781:

"It is the law in this state that neither fraud alone nor ignorance of its existence will prevent the statute of limitation from running. The ignorance which effects such a result must be attended with such concealment of the fraud as will prevent its discovery by the exercise of reasonable diligence."

Appellants must have known that every one was considering their deed as one made in good faith and made for the purposes therein recited, and, if they did not know, their ignorance was inexcusable in the light of the uncontroverted facts.

[4] There was but one verdict that could have been rendered with reason and justice, and the court did not injure appellants by refusing to allow them to introduce additional proof which could not have altered the status of the case. If every fact pleaded by appellants had been placed in evidence, and they had no right to present more, it would not have excused the negligence of appellants in failing, for so many years, to assert any right to the land, which they had conveyed to their father. No word of palliation, no suggestion of reasonable excuse, was offered by appellants for their long inaction and negligence. The court properly instructed a verdict for appellees.

The judgment is affirmed.