**COWDEN et ux. v. LIMPIA ROYALTIES et al.**

**No. 3635.**

Court of Civil Appeals of Texas. El Paso.

Oct. 21, 1937.

Rehearing Denied Nov. 11, 1937.

Whitaker, Perkins & Turpin, of Midland, and Samuels, Foster, Brown & McGee, of Ft. Worth, for appellants.

Saner, Saner & Jack, of Dallas, W. C. Franklin, of Tulsa, Okl., and Frank Stubbeman, of Midland, for appellees.

WALTHALL, Justice.

We will designate and refer to the parties as plaintiffs and defendants as they were in the trial court.

Plaintiffs Edd Cowden and wife, Mrs. Jett Cowden, filed this suit in the district court of Midland county, Tex., on January 11, 1935, against defendants, Limpia Royalties, a trust estate, and W. E. Templeman, N. E. Templeman, and Sam F. Means, as trustees of Limpia Royalties, to have canceled two mineral deeds executed by plaintiffs to Limpia Royalties, one deed being dated April 30, 1930, and conveying to Limpia Royalties an undivided one-sixteenth interest in the minerals under 19,368 acres of land located in Winkler and Andrews counties, Tex., the other deed being dated May 2, 1930, and conveying to Limpia Royalties an undivided one thirty-second interest in the minerals under 3,242 acres of land in Ector county, Tex. The sole consideration for the execution of the two deeds mentioned was the issuance to plaintiffs jointly of a certificate conveying to plaintiffs 6,868 shares of stock or beneficial interest in Limpia Royalties, the shares or

interest exchanged for the two mineral interests being consolidated in the one certificate which was delivered to and accepted by plaintiffs on June 5, 1930.

As the basis for their suit to cancel their mineral deeds, plaintiffs alleged that the trustees of Limpia Royalties, naming them, and including among those named the defendants, made to plaintiffs certain false and fraudulent representations, fully and at much length set out in the petition, and alleged to have induced the execution and delivery of said deeds, and which the trial court submitted in his charge to a jury and which were considered by the jury in connection with other issues submitted, and to which we will later refer when deemed necessary. Plaintiffs further alleged that they did not learn the full extent of the alleged fraud until about April, 1935; that, by reason of the facts stated as ground for cancellation of the deeds, the minds of the parties did not meet upon the subject matter between them, and tendered other issues not stated here but submitted in the court's charge to the jury, to which we will refer later.

Defendants deny plaintiffs' allegations of fraud made in connection with the execution of the deeds.

Defendants pleaded laches in that plaintiffs waited until said lands became productive of oil before they filed this suit on January 11, 1935. Defendants pleaded the bar statute of four years.

After the evidence was heard defendants requested a peremptory instruction which the court overruled and submitted the case to the jury upon 76 special issues.

The court received the jury's verdict and entered judgment thereon that plaintiffs take nothing by their suit. Plaintiffs filed and presented a motion for a new trial which the court heard and overruled, to which plaintiffs excepted, gave notice of appeal and prosecute the same.

Plaintiffs filed assignments of error and present propositions.

Defendants object to a consideration by this court of assignments of error Nos. 1 to 17, inclusive, each separately and respectively, together with the propositions, statements thereunder, and plaintiffs' brief in connection therewith, for the reasons, briefly stated, (a) that the assignments presented in plaintiffs' brief do not relate to the errors complained of in their motion for a new trial, but relate to entirely distinct and different matters not referred to in the motion for a new trial; (b) the assignments of error are not related to any of the grounds in the motion for a new trial and are not fundamental errors.

Plaintiffs' amended motion for a new trial consists of 12 paragraphs, and moves to set aside the verdict and judgment, and for a new trial on the grounds that the answers of the jury to special issue indicated in the paragraph of the motion are contrary to the undisputed testimony of the witness indicated, or were contrary to the undisputed testimony of the parties to the suit, or that the issue indicated is without evidence to support it.

The trial of this case was begun on February 22, 1937; the judgment was entered on March 6, 1937; plaintiffs' amended motion for a new trial was heard and overruled on March 10, 1937; the term of the court ended on March 20, 1937. Rule 24 as amended, and invoked by defendants, became effective on March 1, 1937.

■ We have concluded that, the trial of the case having begun before the rule invoked was effective and ended a few days after the rule was in effect, there was not sufficient time after the publication of the rule for litigants to become familiar with it to justify its enforcement in this case. Stillman v. Hirsch (Tex.Sup.) 99 S.W.(2d) 270. We will not refuse, as moved, to consider the assignments on the ground that they do not relate to nor embrace any of the grounds stated in the motion for a new trial.

We cannot, in the space of an opinion, discuss each of the assignments of error nor discuss severally the 76 findings of fact in determining the judgment that the court should have rendered thereon. We have carefully reviewed them.

The case of Means et al. v. Limpia Royalties et al. (Tex.Civ.App.), reported in 88 S.W.(2d) 1080, is a case practically identical with the present case on the issues of facts there urged and to which case we refer. The case was appealed to this court, the opinion written by Judge Higgins, and writ of error was dismissed by the Supreme Court.

Without discussing the sufficiency of the various assignments of error to present the matter therein referred to or the counter propositions, and without discussing the objections made to admissibility of some of the evidence admitted, we have

concluded to first refer to the jury findings as the basis for the judgment entered, and later discuss such matters as we deem necessary.

Limpia Royalties was created in the state of Oklahoma by a declaration of trust. The trust was not organized as an ordinary commercial enterprise, but was and is a co-operative pooling arrangement by different landowners in connection with the mineral interest in their land; it enables landowners to participate in the co-operative plan through the exchange of a part of their mineral interest for shares in the trust. The trust does not sell its shares to the public, but exchanges its shares only for potential mineral or royalty interests in carrying out the pooling arrangement. None of the properties plaintiffs pooled in the trust was producing property at the time it was exchanged for stock.

The issues tendered by the parties to the suit are fully shown by the issues of fact submitted to and found by the jury.

On issues 1 to 3, submitting whether Limpia Royalties was organized on a basis that exempted stockholders from individual liability from debts of the company, the jury found that such representation was made and was material, but was not relied upon by plaintiffs in executing the deeds. Similar contention was made as to liability under issues 4 to 6, the question being whether the deeds were executed under mutual mistake. The jury found mutual mistake as to liability, but also found that plaintiffs would have executed the deeds though such mutual mistake had not occurred. In that connection, under issues 42 and 43, the jury found that the trustees made such statement of nonliability of shareholders, such statement "was made by the Trustees as their opinion based on the advice and opinion given to them by able and competent attorneys," and the trustees expressed their opinion "in good faith, believing the same at that time to be correct." To issues 7 to 9-b, whether the representation was made that Limpia Royalties was the owner of sufficient assets to successfully finance it over a period of years, the jury answered that such representation was made, was material, and was relied upon by plaintiffs; but we do not find in the record any issue submitted or requested as to whether the representation was true or not. To issues 10 to 12 the jury found that no representation was made to plaintiffs that defendants owned producing oil properties in Oklahoma. Under issues 13 to 15, 16 to 17, and 31 to 33, the jury found against plaintiffs on various allegations that representations were made to the effect that the mineral interests exchanged would be reconveyed to plaintiffs under certain conditions. Under issues 25 to 27 the jury found that it was represented to plaintiffs that "under the plan under which Limpia Royalties was organized, all of the income from rentals, bonuses and royalties was to be paid out in dividends to the stockholders," and that such was material, and was relied upon.

To issues 19 to 27 the jury found that the trustees concealed from plaintiffs the compensation they would receive for their services after December 31, 1931, and that the only compensation they would receive for their services under the plan of organization would be 20 per cent. of all stock issued; that the representations were material inducements, and answered affirmatively the question: "Do you find that plaintiffs would not have entered into said exchange of properties had such representations not been made," and found that the trustees concealed from plaintiffs that they could receive 10 per cent. of each dividend derived from the profits of the trust in addition to the 20 per cent. of the stock sold from the date above stated; and under issues 34 to 43 found that the trustees concealed from plaintiffs that they could receive 10 per cent. of the total authorized shares in addition to the 20 per cent. of stock sold from the above date stated. The above oral representations as to compensation referred to the provisions of the trust agreement.

Under issues 28 to 30 the jury found that the trustees represented that under the plan of organization all expenses of operation would be paid by the trustees, that this representation was material, but was not relied on. To issue 31 the jury found that no representation was made, under the conditions stated, that the lands would be reconveyed; to issue 34 that the trustees concealed from plaintiffs that they could receive 10 per cent. of the total authorized shares in addition to the 20 per cent. of stock sold from the above date stated. To issue 35 and subsequent related issues the jury found in substance that plaintiffs would not have exchanged said lands for stock had they known the trus-

tees could receive such additional compensation, or had such representations not been made; that Edd Cowden first suspected the falsity of any representations in spring of 1934, and Mrs. Jett Cowden first suspected their falsity in summer of 1932; that the statement that there would be no personal liability of the stockholders for the debts of the trust was not a mere statement of opinion; that such statement of nonliability of shareholders was made by the trustees as their opinion in good faith and believed to be correct, based on advice and opinion given to them previously by able and competent attorneys. To issues 44 to 48 the jury found that the trustee did not have a copy of the trust agreement in his hands and within view at any time during the conference with Mrs. Jett Cowden prior to the execution of the deed, nor did he read to her the trust agreement prior to the execution of the deed, nor did he deliver to her prior to the execution of the deed a copy of the trust agreement, nor did she read the trust agreement prior to the execution of the deed, nor did plaintiffs wait an unreasonable time before filing this suit; but found that the trustee did nothing to prevent her from reading the trust agreement. Under issues 50 to 62, on defendants' pleas of limitation and laches, the jury found, in substance, that an inquiry and investigation by plaintiffs in 1930, after execution of said deeds, as to the matters in regard to Limpia Royalties, would have disclosed to them, if they did not then know, all material facts as to provisions of the trust agreement, operations of the trust, and other issues here involved; that plaintiffs failed to use due diligence, ordinary diligence, to ascertain the facts as to Limpia Royalties as to such alleged misrepresentations, if any; that an inquiry and investigation by plaintiffs in 1931 as to the matters in regard to Limpia Royalties would have disclosed to plaintiffs, if they did not then know, all material facts as to the provisions of the trust agreement, operations of the trust, and other issues here involved; that in 1931 plaintiffs failed to use due diligence, ordinary diligence, to ascertain the facts as to Limpia Royalties, if they did not then know, as to such alleged misrepresentations, if any; in 1932 Jett Cowden was told by Cross Payton, in substance, that Limpia Royalties stock "was not worth a dime and no dividends would ever be paid," and that "the stockholders would be liable as parties for its debts"; that in 1932, plaintiffs were suspicious of Limpia Royalties and of the representations, if any, made to them at the time the deeds were executed, at which time an investigation by plaintiffs would have disclosed all material facts as provisions of the trust agreement, operations, and other issues here involved; that plaintiffs failed to use due diligence to ascertain the facts as to Limpia Royalties and as to the alleged misrepresentations, if any; the jury made substantially the same finding as plaintiffs' suspicions for 1933, and failure to ascertain the facts as in 1932; under issue 62 the jury found that by not filing this suit until January 11, 1935, plaintiffs failed to use due diligence, ordinary care, to file this action after having notice of the material facts involved; that plaintiffs did not by their acts or conduct ratify the mineral deed after they had notice of the material facts about Limpia Royalties of which they here complain. Under issue 65 and following related issues the jury found that plaintiffs did not have notice as to the material facts about Limpia Royalties of which they here complain, when they executed the division orders to the Humble Oil & Refining Company, nor to the Standard Oil Company in August, 1933 or 1934; nor did plaintiffs intentionally acknowledge and acquiesce in the ownership by Limpia Royalties of one thirty-second royalty interest under their deed of May 2, 1930. The jury found and stated the value of each of the shares of Limpia Royalties on April 30, 1930, issued to plaintiffs in exchange for the mineral interests.

The court overruled plaintiffs' motion for judgment. Defendants filed a motion for judgment based on the jury's findings on the issues as to limitations, and also in the alternative for judgment non obstante veredicto based on the contention that the jury findings on the alleged misrepresentations are without support in the evidence for actionable fraud.

The court entered judgment that plaintiffs take nothing, and that Limpia Royalties have judgment on its cross action, its title to the mineral interests quieted, and the cloud cast on its title be removed.

Plaintiffs excepted, filed amended motion for new trial, which the court overruled on March 10th, to which plaintiffs excepted and prosecute this appeal.

*Opinion.*

By this suit plaintiffs seek to set aside the two mineral deeds to the undivided interests therein described conveyed to defendant Limpia Royalties, a trust estate, the deeds executed and delivered one in April, 1930 and one in May, 1930. The grounds alleged for setting aside said deeds are the alleged fraud and misrepresentations fully submitted to and found by the jury in the issues above stated. There are some uncertainties and conflicts in some of the jury's findings, but possibly not more than is usual considering the numerous issues submitted.

The verdict of the jury was fully and ably discussed in the briefs filed and in oral argument. We have carefully considered plaintiffs' assignments of error and defendants' counter propositions, and have concluded that, in view of defendants' plea of the four-years statute of limitation, the undisputed evidence thereon, and the jury's findings on the facts referring to said plea, all the other issues submitted and found by the jury are immaterial, and, if the plea of limitations can be sustained by the record, the judgment entered should be affirmed, and no good could be subserved by a discussion of the other issues. ·We might say, however, without indicating them, that for apparent reasons, pointed out by the counter propositions, some of the assignments, filed under the old rules, are not in a condition to be considered here.

On the plea of limitation, it may be said that, while plaintiffs in 1930 executed the deeds to Limpia Royalties, the uncontroverted evidence is that, either before or a few days after the execution of the deeds, plaintiffs received from the trustees a printed booklet correctly explaining the provisions of the trust agreement as to all the matters complained of in their suit; and also received and accepted stock certificates which recited same was subject to the terms of the trust agreement, with place of record thereof given, and reciting that the certificate was issued subject to the terms of the trust agreement, by which it was expressly made a part thereof, and assented to, and where it is not made to appear that the trustees said or did anything to prevent plaintiffs from reading the certificate and trust agreement; and where it is shown that within two or three years after the exchange of the properties plaintiffs became suspicious of the matters here complained of, made no inquiry as to the trust or provisions of the trust agreement, and where the jury found that an inquiry by plaintiff in 1930 would, have disclosed all facts now claimed as misrepresentations, but failed to use any diligence to ascertain the facts, and other facts found by the jury beginning with issue 50 and subsequent issues found, and to which we refer without quoting them here, it seems to us that plaintiffs' suit filed on January 11, 1935, under said findings, is barred by the four-year statute, and the court's judgment was proper, regardless of any other issues or findings. We do not find where plaintiffs present any assignment complaining of the issue of limitation other than that, since fraud had occurred before the date inquired about in the issues, and such fraud had not been discovered for a period of time short of limitation, plaintiffs have a right to recover as a result of such fraud.

The rule as to when limitation begins to run in actions based on fraud or mistake is summarized in Glenn v. Steele et al. (Tex.Sup.) 61 S.W.(2d) 810; the rule there stated is that, "limitation begins to run from the time of the discovery of the fraud, or from the time it might have been discovered by the use of reasonable diligence." Other cases referred to in Tex. Jur. 20, p. 112, § 75; Western Wool Commission Co. v. Hart (Tex.Sup.) 20 S.W. 131; Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37, in which Judge Stayton said: "It has been held, in cases where there was fraudulent concealment of a cause of action, that the statutes of limitation would not operate until the facts became known, or by the exercise of diligence might have been known. This rule, so far as we know, has never been applied to cases such as the one now before us; but, on the contrary, it has been steadily held that a mere want of knowledge by the owner of injury to his property does not prevent the running of the statute," and referred to authorities. Other cases we have examined: Texarkana Motor Co. v. Brashears (Tex.Civ.App.) 37 S.W.(2d) 773; Raley v. D. Sullivan & Co. (Tex.Com.App.) 207 S.W. 906; Kuhlman v. Baker, 50 Tex. 630, a suit to cancel a deed for alleged fraud, in which the court said: "If the alleged fraud constituted a sufficient reason why the plaintiff did not at the time the deed was made discover that it was a quit-claim, his subsequent failure to inform himself as to the contents of his deed in so material a point was chargeable to his own neglect of ordinary precaution. There is no alle-

gation of any act or representation of defendant subsequent to the deed tending to prevent its examination, nor does it sufficiently appear that the alleged confidential relation of the parties continued until the discovery." In Carrillo v. Carrillo (Tex. Civ.App.) 289 S.W. 88, 90, after saying that the rule that fraud will prevent the running of limitation is not statutory but a rule added by judicial construction, and, being in conflict with the policy of such statutes to promote peace and bring repose, Judge Fly, for the San Antonio court, said: "The judicial grafting on the statute must have strict rules applied to it, and no one who has been negligent or indifferent to their rights, as well as those of others, should be allowed to profit by a plea of fraud and disturb the rights of others. Neither fraud alone, nor ignorance of its existence, will justify delay and laches on the part of persons claiming to have been defrauded, where they discovered the fraud or could have discovered it by the exercise of reasonable diligence." In that case Judge Fly copied from Prosser v. First Nat. Bank (Tex.Civ.App.) 134 S.W. 781, and referred to the following with approval: "It is the law in this state that neither fraud alone nor ignorance of its existence will prevent the statute of limitation from running. The ignorance which effects such a result must be attended with such concealment of the fraud as will prevent its discovery by the exercise of reasonable diligence."

We have concluded that defendants' plea of the four-year statute of limitation has application under the pleading, the evidence, and the jury's findings.

The case is affirmed.